# Exhibit B

Electronically Filed
11/27/2013 09:34:51 AM

CLERK OF THE COURT

**PEXMT**
SOPHIA A. MEDINA, ESQ.
Nevada Bar No.: 12446
**LEGAL AID CENTER OF**
**SOUTHERN NEVADA, INC.**
725 E. Charleston Blvd.,
Las Vegas, NV 89104
Telephone: (702) 386-1070 x 1453
Facsimile: (702) 386-1453
smedina@lacsn.org

EIGHTH JUDICIAL DISTRICT COURT

CLARK COUNTY, NEVADA

JUDITH STARKS,

    Plaintiff,

vs.

TITLEMAX OF NEVADA, INC., a registered foreign corporation; DOES I through X, inclusive; and ROES 1 through 10, inclusive,

    Defendants.

Case No.:   A-13-692261-C
Dept. No:   XXVI

**PLAINTIFF'S MOTION FOR AN EX PARTE TEMPORARY**
**RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

  Plaintiff, JUDITH STARKS, by and through counsel, Sophia A. Medina, Esq. of the Legal Aid Center of Southern Nevada, Inc., pursuant to NRS 33.010(2) and NRCP 65(b), moves this Honorable Court for a ex parte temporary restraining order preventing the sale of the subject vehicle, the 2012 Cadillac CTS, VIN (1G6DP1E39C0134051), which is currently scheduled for December 2, 2013, as well as preventing denial of access to Plaintiff's personal property held in storage.

  Plaintiff further moves this Court pursuant to NRS 33.010(2) and NRCP 65(a) for a preliminary injunction after notice.

  This Motion is made pursuant to NRCP 65, the attached exhibits, the affidavits, the

points and authorities and the records and files herein.

DATED this  27th  day of November, 2013.

**LEGAL AID CENTER OF
SOUTHERN NEVADA, INC.**

  /s/   Sophia A. Medina
SOPHIA A. MEDINA, ESQ.
Nevada Bar No.: 12446
**LEGAL AID CENTER OF
SOUTHERN NEVADA, INC.**
725 E. Charleston Blvd.,
Las Vegas, NV 89104
Telephone: (702) 386-1070 x 1453
Facsimile: (702) 386-1453
smedina@lacsn.org

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that the undersigned will bring the foregoing MOTION FOR PRELIMINARY INJUNCTION on for hearing before the above-entitled Court on the  8  day of  Jan. 2014 9:00am , 2013, at _____ .m. in Department  XXVI .

DATED this  27th  day of November, 2013.

**LEGAL AID CENTER OF
SOUTHERN NEVADA, INC.**

   /s/    Sophia A. Medina
SOPHIA A. MEDINA, ESQ.
Nevada Bar No: 12446
725 E. Charleston Blvd.
Las Vegas, Nevada 89104
Telephone: (702) 386-1070 x 1453
Facsimile: (702) 386-1453
smedina@lacsn.org
Attorney for Plaintiff

# I. MEMORANDUM OF POINTS AND AUTHORITIES

## A. INTRODUCTION

This Motion is made to prevent further injury to Plaintiff, JUDITH STARKS (hereinafter, "Plaintiff"), resulting from Defendant, TITLEMAX OF NEVADA, INC.'s (hereinafter, "Defendant"), possible unlawful sale of Plaintiff's vehicle, a 2012 Cadillac CTS, VIN (1G6DP1E39C0134051).

Bottom line, it is Plaintiff's position that Defendant knowingly violated state law, specifically NRS Chapter 604A. All of Defendant's actions were done with full knowledge of the applicable statute and Plaintiff's rights. As such, Defendant is prevented, by NRS 604A.900 from enforcing its remedies under the loan.

## B. STATEMENT OF FACTS

Plaintiff is a 67 year old retiree. Ms. Starks' income consists of a small pension of $477.00 per month and Social Security of $1,440.00 for a total monthly income of $1,917.00. See November 26, 2013, Affidavit of Ms. Judith Starks, attached hereto as Exhibit 1. Ms. Starks' monthly expenses total $1,812.00 and are as follows:

    a. Rent = $1,113.00

    b. NV Energy = $50.00 (approximately)

    c. Southwest Gas = $28.00 (approximately)

    d. Cell Phone = $60.00 (approximately)

    e. Auto Insurance = $114.00

    f. Supplemental Health Insurance = $162.00

    g. Television/Telephone = $60.00

    h. Storage Unit = $40.00

    i. Groceries/Household needs = $185.00 (Exhibit 1)

1   Based her income and expenses, Ms. Starks only has approximately $105.00 at the end of
2   every month. See Exhibit 1.
3   On July 14, 2013, Ms. Starks went to TitleMax, located at 3525 S. Fort Apache Rd., Suite
4   160 Las Vegas, NV 89147, to obtain a title loan on her vehicle. See Exhibit 1. The vehicle in
5   question is a 2012 Cadillac CTS, VIN (1G6DP1E39C0134051). See Exhibit 1. Ms. Starks
6   provided her income, which consists of a small pension of $477.00 per month and Social
7   Security of $1,440.00 for a total monthly income of $1,917.00. See Exhibit 1. Upon information
8   and belief, TitleMax only took into account Ms. Starks' Social Security. See Exhibit 1. On or
9   about July 18, 2013, TitleMax issued Ms. Starks a loan of $6,000.00 at an interest rate of
10  121.55% for a finance charge of $599.40 for a total of payments at the end of the 30 day period
11  of $6,599.40. See Exhibit 1. Being unable to make the full payment on August 17, 2013, Ms.
12  Starks informed TitleMax that she would not be able to make the payment in full. See Exhibit 1.
13  Ms. Starks was able to make a payment of $600.00 on August 20, 2013 and an additional
14  payment of $599.35 on September 16, 2013. See Exhibit 1. These payments only constituted
15  payments towards interest, not towards the principal.

Due to Ms. Starks's limited income she was not able to make an additional payment in October. See Exhibit 1. On October 26, 2013, TitleMax sent Ms. Starks a letter regarding the opportunity for her to enter into a Repayment Plan. See Exhibit 1. Due to the amount of the initial payment (approximately 70% of Ms. Starks income, not including expenses) Ms. Starks was not able to take advantage of this plan. On November 19, 2013, TitleMax proceeded to repossess Ms. Starks's vehicle. On November 22, 2013 TitleMax sent Ms. Starks a letter stating that it will be selling her vehicle sometime after December 2, 2013.

## II. ARGUMENT

NRS 33.010(2) states that an injunction may be issued "when it shall appear by the

complaint or affidavit that the commission or continuance of some act, during the litigation, would produce great or irreparable injury to the plaintiff." In addition, the moving party must demonstrate that it ". . . has a reasonable likelihood of success on the merits." Boulder Oaks Community Ass'n v. B & J Andrews Enterprises, LLC, 215 P.3d 27, 31 (2009) (citing NRS 33.010, University Systems v. Nevadans for Sound Gov't, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004) Danberg Holdings v. Douglas Co., 115 Nev. 129, 142, 978 P.2d 311, 319 (1999)).

Here, Plaintiff will suffer great and irreparable injury if Defendant is allowed to sell Ms. Starks' vehicle, the sale of which is currently scheduled for December 2, 2013, during the pendency of the litigation. Plaintiff's irreparable injury will result from the permanent loss of her vehicle. Moreover, as outlined below, Plaintiff has a reasonable likelihood of success on the merits.

A. **DEFENDANT HAS VIOLATED NRS CHAPTER 604A AND AS SUCH THE LOAN AGREEMENT IS VOID**

NRS 604A.402(2) states "A licensee who makes title loans shall not [m]ake a title loan without regard to the ability of the customer seeking the title loan to repay the title loan, including the customer's current and expected income, obligations and employment."

Here Plaintiff's total income is $1,917.00 with total monthly expenses of $1,812.00. Based upon the above, the most that Plaintiff would ever be able to repay is $105.00. This is a far cry from the $6,599.40 that Plaintiff was required to repay. Based upon Plaintiff's income and Expenses, Defendant should have never extended Plaintiff the subject loan. Therefore, Defendant willfully made a loan to Plaintiff without first considering her ability to repay pursuant to NRS 604A.402(2).

Pursuant to NRS 604A.900: Except as otherwise provided in this section, if a licensee willfully:

Page 5 of 8

    (a) Enters into a loan agreement for an amount of interest or any other charge or fee that violates the provisions of this chapter or any regulation adopted pursuant thereto;
    (b) Demands, collects or receives an amount of interest or any other charge or fee that violates the provisions of this chapter or any regulation adopted pursuant thereto; or
    (c) Commits any other act or omission that violates the provisions of this chapter or any regulation adopted pursuant thereto,

**the loan is void** and the licensee is not entitled to collect, receive or retain any principal, interest or other charges or fees with respect to the loan. (Emphasis added.)

Based upon the above, Defendant is not entitled to repossess and/or sell Plaintiff's vehicle and cannot retain any monies paid by Plaintiff to Defendant.

### B. VIOLATIONS OF NRS 598.0923

Due to the violation of NRS Chapter 604A, specifically NRS 604A.402(2) Defendants have violated NRS 598.0923 which states: A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she knowingly violates a state or federal statute or regulation relating to the sale or lease of goods or services.

Furthermore, NRS 41.600(1) states that an action may be brought by any person who is a victim of consumer fraud. NRS 41.600(2) defines "consumer fraud" as a "deceptive trade practice" as defined in NRS 598.0915 to NRS 598.0925.

Here, by willfully extending Plaintiff a title loan without first considering her ability to repay, in violation of NRS Chapter 604A, Defendant knowingly violated a state statute relating to the sale of goods or services and is therefore in violation of NRS Chapter 598 by engaging in deceptive trade practices in relation to the sale of goods or services.

### C. CONVERSION

Defendant TitleMax committed a distinct act of dominion wrongfully exerted over Plaintiff's vehicle. Defendant TitleMax retained possession of Plaintiff's vehicle in derogation, exclusion, or defiance of the overwhelming evidence of Plaintiff's ownership. Defendant

intended to exercise control over the vehicle when Defendant took possession from Plaintiff.

As a direct and proximate result of Defendant's acts or omissions, Defendant deprived Plaintiff of their right to immediate possession of the vehicle. As a direct and proximate result of Defendants' actions, Plaintiff lost the use of her vehicle, to date, for seven days (7), causing Plaintiff to suffer loss-of-use damages. Based upon the violation of NRS Chapter 604A, which rendered the loan void, Defendant did not have a valid security interest in the vehicle and therefore was not entitled to repossess the vehicle.

D. **AS PLAINTIFF IS INDIGENT AND THE VICTIM OF ILLEGAL ACTIONS BY DEFENDANT, SHE SHOULD NOT BE REQUIRED TO POST A BOND.**

Finally, no bond should be required in this case because the Defendant is in possession of the subject vehicle and will incur no prejudice by holding off on the sale of the vehicle or allowing Plaintiff to retrieve her personal belongings. As the court in Pinovelle Indian Community v. Mendocino County, 684 F.Supp. 1042, 1047 (N.D.Cal. 1988), stated:

> Courts have the discretion to excuse the bond requirement under appropriate circumstances, such as where requiring security will deny access to judicial review, or where a suit is brought on behalf of a group of mostly indigent persons.

Id. (citation omitted). These factors are especially true in this case because Plaintiff is on a fixed income consisting of only $1,917.00 per month.

Plaintiff will suffer great and irreparable injury by losing her vehicle, the sale of which is scheduled for December 2, 2013, as once it is sold she will not be able to recover the vehicle. Additionally, as the attached affidavit of Judith Starks affirms, Plaintiff states facts supporting the conclusion that the Defendant's actions were unlawful.

### III. CONCLUSION

Given the foregoing, the Plaintiff requests that this court grant the motion for a temporary restraining order, excuse the bond requirement, enjoin the sale of the subject property, and allow

1  Plaintiff to retrieve any personal belongings she may have in the vehicle.

2      DATED this  27th  day of November, 2013.

3

4

5                        /s/   Sophia A. Medina
                      SOPHIA A. MEDINA, ESQ.
                      Nevada Bar No: 12446

6                        725 E. Charleston Blvd.
                      Las Vegas, Nevada 89104

7                        Telephone: (702) 386-1070 x 1453
                      Facsimile: (702) 386-1453

8                        smedina@lacsn.org
                      Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

**AFFT**
SOPHIA A. MEDINA, ESQ.
Nevada Bar No.12446
**LEGAL AID CENTER OF**
**SOUTHERN NEVADA, INC.**
725 E. Charleston Blvd.,
Las Vegas, NV 89104
Telephone: (702) 386-1070 x 1453
Facsimile: (702) 386-1453
smedina@lacsn.org

# EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| JUDITH STARKS, | Case No.: |
| | Dept. No: |
| Plaintiff, | |
| vs. | |
| TITLEMAX OF NEVADA, INC., a registered foreign corporation; DOES I through X, inclusive; and ROES 1 through 10, inclusive, | |
| Defendants. | |

### AFFIDAVIT OF JUDITH STARKS.

STATE OF NEVADA   )
                  ) ss:
COUNTY OF CLARK   )

I, JUDITH STARKS, depose and state as follows:

1. My income consists of a small pension of $477.00 per month and Social Security of $1,440.00 for a total monthly income of $1,917.00.

2. My monthly expenses total $1,812.00 and are as follows:

1

    a. Rent = $1,113.00

    b. NV Energy = $50.00 (approximately)

    c. Southwest Gas = $28.00 (approximately)

    d. Cell Phone = $60.00 (approximately)

    e. Auto Insurance = $114.00

    f. Supplemental Health Insurance = $162.00

    g. Television/Telephone = $60.00

    h. Storage Unit = $40.00

    i. Groceries/Household needs = $185.00

3. Based upon my income and expenses, I only have approximately $105.00 at the end of every month.

4. On or about July 9, 2013, I went to TitleMax located on 3525 S. Fort Apache Rd., Suite 160 Las Vegas, NV 89147 to inquire about getting a title loan on my vehicle.

5. I spoke with a man who I believed to be the General Manager.

6. He explained to me that the loan would be 9.9% interest and explained to me how simple the title loan process was.

7. I went to TitleMax, 3525 S. Fort Apache Rd., Suite 160 Las Vegas, NV 89147, again on or about July 14, 2013.

8. I spoke with Megan, the Office Manager, as the General Manager was out of town.

9. At that time, I showed Megan my income.

10. Megan said that my Social Security alone was enough to get a loan.

11. Megan told me that they didn't need my pension information, giving the paper

2

back to me, and just took a copy of my Social Security award letter.

12. The vehicle that I went to get a title loan on is a 2012 Cadillac CTS, VIN 1G6DP1E39C0134051.

13. TitleMax informed me what I needed to do with the DMV in order to put TitleMax on the title.

14. After I went to the DMV, on the same day or next day, I went back to TitleMax.

15. TitleMax issued me a loan of $6,000.00 with a finance charge $599.40.

16. Megan told me that the interest rate was 9.9% interest.

17. I didn't know that I was going to be charged $599.40 every 30 days until I paid the loan off.

18. Of the four boxes on the Title Loan Agreement, two of them are blacked out so I didn't think they applied to my loan.

19. It wasn't until I sought the help of Legal Aid Center of Southern Nevada, Inc., that I learned that the annual interest rate was 121.55% so I was being charged approximately an additional 9.9% monthly.

20. Being unable to make the full payment on August 17, 2013, I went into TitleMax to inform them that I would not be able to make the payment in full.

21. I was able to make a payment of $600.00 on August 20, 2013 and an additional payment of $599.35 on September 16, 2013.

22. I was able to make those payments because I hadn't used all of the money from this loan and used loan money to make payments on the loan.

23. However, as that was all the money I had left, and due to my limited income I was not able to make an additional payment in October.

3

24. On October 26, 2013, TitleMax sent me a letter regarding the opportunity for me to enter into a Repayment Plan.

25. Due to the amount of the initial payment, $1,319.75, which is nearly 70% of my monthly income I was not able to take advantage of this plan.

26. On November 19, 2013, TitleMax proceeded to repossess my vehicle.

27. I came to Legal Aid Center of Southern Nevada, Inc., on Wednesday, November 20, 2013.

28. Upon information and belief, the attorney that was helping me mailed a letter to TitleMax on November 21, 2013, asking them not to sell the vehicle until they could discuss my situation and so both sides could investigate this case.

29. On Saturday, November 23, 2013, I received a letter from TitleMax, dated November 22, 2013, telling me that they are going to sell my vehicle after Monday, December 2, 2013.

30. I do not have any other method of transportation.

31. I cannot now, nor could I at the time this loan was given to me, afford to pay back this loan.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
JUDITH STARKS

SUBSCRIBED AND SWORN to before
me this 26th day of November, 2013.

_____
Notary Public

A. ROSA NAJERA
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 04-13-15
Certificate No: 99-36092-1

4